FILED

2015 Sep-18  PM 02:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| ROBERTA E. HANKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2:14-cv-001431-TMP |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

## I.    Introduction

The plaintiff, Roberta E. Hankins, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").  Ms. Hankins timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Hankins was forty-six years old at the time of the alleged onset of disability, and she has a high school education.  (Tr. at 25).  Her past work

experiences include employment as a customer service representative, telemarketer, food preparer, and dietary aid. (*Id.*) Ms. Hankins claims that she became disabled on June 15, 2010, due to bipolar disorder, depression, and psychosis. (Tr. at 128, 180).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id.* If she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id.* The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P,

Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the claimant's impairments fall within this category, she will be found disabled without further consideration.  *Id.*  If they do not, a determination of the claimant's residual functional capacity will be made and the analysis proceeds to the fourth step.  20 C.F.R. §§ 404.1520(e), 416.920(e).  Residual functional capacity ("RFC") is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite her impairments.  20 C.F.R. § 404.945(a)(1).

The fourth step requires a determination of whether the claimant's impairments prevent her from returning to past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant can still do her past relevant work, the claimant is not disabled and the evaluation stops.  *Id.*  If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.*  Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience, in order to determine if she can do other work.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can do other work, the claimant is not disabled.  *Id.*  The burden is on the Commissioner to demonstrate that other jobs exist which the claimant can perform; and, once that burden is met, the claimant must prove her inability to perform those jobs in order to be found disabled.  *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying the sequential evaluation process, the ALJ found that Ms. Hankins meets the nondisability requirements for a period of disability and DIB and was insured through the date of his decision. (Tr. at 16). She further determined that Ms. Hankins has not engaged in substantial gainful activity since the alleged onset of her disability in June 2010. (*Id.*) According to the ALJ, Plaintiff's obesity, diabetes mellitus, right eye blindness causing poor binocular focus, major depressive disorder, and post-traumatic stress disorder ("PTSD") are considered "severe" based on the requirements set forth in the regulations. (Tr. at 16). The ALJ found that the plaintiff also suffers from the medically determinable nonsevere impairments of hypertension, COPD, GERD, arthritis, and lumbago. (Tr. at 16-17). However, she found that these impairments, together or in combination, neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 17). The ALJ found that the plaintiff's testimony regarding the intensity, persistence, and limiting effects of her symptoms are not entirely credible. (Tr. at 20). She determined that the plaintiff has the RFC to perform light work with several limitations. (Tr. at 19). The plaintiff may only occasionally balance, stoop, kneel, crouch, crawl, or climb ramps and stairs, and she may never climb ladders ropes, or scaffolds. The plaintiff must be allowed to alternate between standing and sitting every hour while remaining on task. She

must avoid exposure to dangerous equipment, hazardous machinery, and she may not operate commercial motor vehicle equipment.  She must avoid work that requires depth perception to complete assigned tasks.  The plaintiff is able to understand, remember, and carry out unskilled, simple, repetitive and routine tasks.  She must work in an environment that does not have stringent production or speed requirements and has little change in terms of tools, processes, or settings and where necessary change is introduced gradually.  Plaintiff may have only superficial contact with coworkers, supervisors, and the public.  (*Id.*)

According to the ALJ, Ms. Hankins is unable to perform any of her past relevant work.  She is a younger individual with a high school education, and is able to communicate in English as those terms are defined by the regulations.  (Tr. at 25).  She determined that "[t]ransferability of job skills is not material to the determination of disability" because "the claimant is not disabled whether or not the claimant has transferable job skills."  (*Id.*)  The ALJ found that Ms. Hankins has the residual functional capacity to perform a significant range of light work.  (*Id.*)  Even though the plaintiff cannot perform the full range of light work, the ALJ determined that there are a significant number of jobs in the national economy that she is capable of performing, such as vacuum form operator, molding machine tender, and carton assembler.  (Tr. at 26).  The ALJ concluded her findings by

stating that the plaintiff "has not been under a disability, as defined in the Social Security Act, from June 15, 2010, through the date of this decision." (*Id.*)

## II.    Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.  *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  The court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Federal Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this court finds that the

evidence preponderates against the Commissioner's decision, the court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

The court must keep in mind that opinions such as whether a claimant is disabled, the nature and extent of a claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). Whether the plaintiff meets the listing and is qualified for Social Security disability benefits is a question reserved for the ALJ, and the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Thus, even if the court were to disagree with the ALJ about the significance of certain facts, the court has no power

to reverse that finding as long as there is substantial evidence in the record supporting it.

## III.   Discussion

Ms. Hankins alleges that the ALJ's decision should be reversed and remanded because the ALJ failed to properly consider the opinions of her treating psychiatrist, Dr. Parker, and the examining source, Dr. Beidleman.

### A. Dr. Parker

A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted).  The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source.  *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).  Furthermore, "good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating

physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (*citing Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

Furthermore, decisions regarding whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors are reserved for the Commissioner, because such decisions direct the outcome of the plaintiff's case. 20 C.F.R. §§ 404.1527(e), 416.927(d). The Court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's residual functional capacity. *See, e.g.,* 20 C.F.R. § 404.1546(c).

The plaintiff's medical records from Dr. Parker begin in May 2011. On May 10, 2011, the plaintiff is noted as having good recall and directed thoughts. (Tr. at 401). On May 17, Dr. Parker listed the plaintiff's diagnosis as Bipolar disorder and

PTSD, and issued her a GAF score of 40.  (Tr. at 402).  Dr. Parker noted on June 15, 2011, that the plaintiff had excellent medication adherence and presented with depressed mood and decreased energy level.  (Tr. at 419).  On August 10, 2011, the plaintiff again presented with depressed mood and decreased energy. (Tr. at 417).  On August 31, however, Dr. Parker noted excellent medication adherence and the plaintiff presented with improved mood, affect, and energy. (Tr. at 415).

On October 5, 2011, Dr. Parker completed a questionnaire regarding Ms. Hankins' RFC.  (Tr. at 396-97).  Dr. Parker was asked to rate the plaintiff's difficulties as mild, moderate, marked, or extreme.  The questionnaire defines marked difficulties as impairments "which seriously affects ability to function," and extreme difficulties as "severe impairment[s] of ability to function."  (Tr. at 396).  Dr. Parker indicated that the plaintiff had marked restriction of activities of daily living, marked difficulty in maintaining social functioning, and marked difficulty in performing simple tasks in a work setting and responding appropriately to co-workers in a work setting. (Tr. at 396-97).  He stated that the plaintiff would experience extreme deficiencies of concentration, persistence, or pace resulting in frequent failure to complete tasks in a timely manner; extreme difficulty in responding to customary work pressures; extreme difficulty in understanding,

carrying out, and remembering instructions in a work setting; extreme difficulty in responding appropriately to supervision in a work setting; and extreme difficulty in performing repetitive tasks in a work setting. (*Id.*)

The plaintiff returned to Dr. Parker on October 12, 2011. (Tr. at 413). She was reported to have excellent medication adherence, improved mood and affect, and decreased energy. (*Id.*) On November 23, 2011, Dr. Parker's records again note excellent medication adherence by the plaintiff. (Tr. at 411). Dr. Parker's notes also indicate that the plaintiff's mood, affect, and energy are improved. On March 7, 2012, Dr. Parker notes good medication adherence and baseline mood and energy. (Tr. at 409). In April 2012, the notes indicate the same mood and energy levels, along with excellent medication adherence. (Tr. at 407). On June 6, 2012, Dr. Parker's notes indicate poor medication adherence along with depressed mood and decreased energy. (Tr. at 405). When the plaintiff returned on June 13, there was no note regarding medication adherence, but the notes do indicate improved mood, affect, and energy level. (Tr. at 403). On August 2, 2012, Dr. Parker submitted a letter stating that the plaintiff "has been receiving treatment and services" at the Jefferson-Blount-St. Clair Mental Health Authority ("JBS") since May 2011. (Tr. at 581). Dr. Parker further states, "[i]t is my opinion that Ms. Hankins is not able to work at this time or in the near future." (*Id.*)

Ms. Hankins' notes from JBS on November 7, 2012, state that the plaintiff reports a flat moot that has persisted for months as well as paranoia.  (Tr. at 578). On January 9, 2013, the plaintiff's JBS notes indicate a low mood but adequate attention to appearance.  (Tr. at 577).  The plaintiff's JBS notes from February 6, 2013, indicate that she was out of her medication over the weekend, and that she "doesn't think she is depressed now, but looks dysphoric."  (Tr. at 575).

The plaintiff argues that the ALJ should have given great weight to Dr. Parker's questionnaire completed on October 5, 2011, and to Dr. Parker's letter dated August 2, 2012, opining that Ms. Hankins is not able to work.  The plaintiff supports her assertions by pointing to the plaintiff's latest records from JBS, which note that she presented with a flat and low mood in November 2012 and January 2013, and appeared dysphoric, despite denying depression.  (Tr. at 575, 577-78). Ultimately, the plaintiff asks the court to reweigh the plaintiff's medical records to find that they support Dr. Parker's assertion that the plaintiff cannot work. However, it is not within the purview of the court to reweigh evidence.  *Dyer*, 395 F.3d at 1210.  Even if the evidence preponderates in favor of the plaintiff, so long as the ALJ's determination is based on a substantial evidence, the court must affirm the ALJ's decision. *Miles*, 84 F.3d at 1408.

The ALJ gives Dr. Parker's opinion regarding the plaintiff's inability to work

little weight, stating:

> The undersigned gives little weight to the opinion of the claimant's former treating provider, Dr. James Parker, who in October 2011, opined the claimant had extreme limitations in: concentration, persistence, or pace; ability to respond to customary work pressures; ability to understand, carry out, and remember instructions in a work setting; ability to respond appropriately to supervision; and ability to perform repetitive tasks in a work setting and marked restrictions with: activities of daily living; social functioning; responding appropriately to co-workers; and ability to perform simple tasks (Exhibit 19F).  He provided a subsequent opinion in August 2012 indicating the claimant was not able to work at that time or in the near future (Exhibit 30F).  His latest statement is conclusory on an issue reserved to the Commissioner and does not set forth the claimant's functional abilities (Social Security Ruling 96-5p).  Additionally, his opinions are not consistent with his own treatment records, which show that the claimant's mood, affect, and activity level improved with treatment compliance (Exhibits 12F, 21F).  Furthermore, the claimant denied depression at her latest examination (Exhibit 29F at 6).

(Tr. at 24).  The ALJ supports her determination by pointing to Dr. Parker's

medical notes from May 2011 to June 2012, which indicate that, when the plaintiff

adheres to her medication regiment, her symptoms improve.  The ALJ properly

weighed the overall medical impressions in Dr. Parker's treatment notes as being

contrary to his assessments in the October questionnaire.  To the extent the

plaintiff argues that Dr. Parker's opinions regarding the plaintiff's RFC and ability to work should be controlling, such arguments cannot stand.  Although the court is interested in the treating physician's opinion regarding the plaintiff's ability to work, the ultimate legal conclusion is left to the Commissioner.  *Lewis*, 125 F.3d at 1440.

The court notes also that, not only are Dr. Parker's treatment notes inconsistent with his questionnaire assessments, they also are contradicted by the evaluation of Dr. Guendalina Ravello, a psychologist, who opined in September 2011, that plaintiff had only moderate limitations in the various areas of mental functioning.  (Tr. at 391-393).  Thus, there is other medical evidence in the record for questioning Dr. Parker's October 2011 questionnaire answers.

The plaintiff further asserts that the ALJ had a duty to contact Dr. Parker and expand the record to address any discrepancies between the medical records and Dr. Parker's opinion of the plaintiff's ability to work.  However, the ALJ's duty to develop the record is not triggered when the record contains sufficient evidence to make an informed decision.  *Ingram v. Commissioner of Social Security*, 496 F.3d 1253, 1269 (11th Cir. 2007).   The Eleventh Circuit has determined that a consultative examination must be ordered if one is needed to make an informed decision regarding the claimant's disability.  *Reeves v. Heckler*, 734 F.2d 519, 522 n.1

(11th Cir. 1984), citing *Ford v. Secretary of Health and Human Servs.*, 659 F.2d 66, 69 (5th Cir. 1981) (Unit B).  An ALJ may request a consultative examination "to secure needed medical evidence, such as clinical findings, laboratory tests, a diagnosis, or prognosis" if the record indicates "a change in [the claimant's] condition that is likely to affect [the claimant's] ability to work, but the current severity of [the claimant's] impairment is not established."   20 C.F.R. § 404.1519a(b)(4).

However, if the record is sufficiently developed for the ALJ to make a determination, it is not necessary for the ALJ to order an additional consultative examination or to expand the record.  *Good v. Astrue*, 240 Fed. Appx. 399, 403-404 (11th Cir. 2007).  In the instant case, the ALJ had available:

- Office Treatment Records from: Southern Highlands dated September 2006 to September 2010; Theodore Werblin, MD, dated April 2003 to September 2010; Bluefield Mental Health Center dated May 2010;  Brookwood Medical Center dated April 2011 to May 2011; Birmingham Health Care dated May 2011 to December 2012; JBS Mental Health dated May 2011 to February 2013; UAB Eye Clinic dated July 2012;
- Consultative Examination Reports from: New Horizons Psychiatric Association dated September 2010; Craft Medical Corporation dated October 2010; Kenneth Randall Smith dated July 2011; William B. Beidleman dated August 2011; and
- Hospital Records from: Cooper Green Mercy Hospital dated January 2012 to January 2013; St. Vincents Birmingham dated May 2012 to June 2012.

The record in this case was sufficiently developed to allow the ALJ to make an RFC determination without seeking an additional consultative examination or further information from Dr. Parker.

### B. Dr. Beidleman

Finally, the plaintiff argues that the ALJ did not properly credit the opinion of evaluating physician Dr. Beidleman.   Beidleman detailed his evaluation of Ms. Hankins in a letter dated August 9, 2011.   He gave the following diagnostic impressions and prognosis:

> Diagnostic impressions for Ms. Hankins includes bipolar disorder, most recent episode depressed.  She also probably merits a diagnosis of generalized anxiety disorder, although those symptoms were not omnipresent during the evaluation.  There is also a real possibility that her diagnosis actually is major depression, recurrent, moderate.  She is currently taking psychoactive medications and will remain in treatment with the mental health authority's Dr. Parker.  The current Global Assessment of Functioning score is 54.  She may have trouble functioning independently in a job environment right now.  She should be able to remember simple job instructions and respond appropriately to fellow employees and supervisors.  Again, coping with ordinary work pressures may be somewhat problematic.
>
> Prognosis for favorable response to treatment is relatively good given she is in active mental health treatment and living in a structured environment.   Motivation and cooperation with the examination process were adequate.   Psychiatric evidence of record in Ms.

> Hankins' case was reviewed and those findings were considered in the overall assessment of this interesting woman.

(Tr. at 376). The ALJ gave some weight to Beidleman's opinion that the plaintiff may have difficulty functioning independently in a work environment. (Tr. at 24). However, she did not give his opinion great weight because, at the time of the consultation, the plaintiff was not compliant in taking her medications.[1] (*Id.*) Even so, Dr. Beidleman's assessment found only moderate depression, with a good prognosis with continued treatment. Dr. Parker's notes confirmed that overtime her mental-health symptoms improved.

As addressed previously, the ALJ must consider several factors in determining the weight to be given to a medical opinion. 20 C.F.R. § 404.1527(c). Different types of medical sources are entitled to differing weights. The opinion of a treating physician, who has an ongoing relationship with the patient, is entitled to the greatest weight. A non-treating physician or psychologist, who has examined the patient but does not treat the patient, is entitled to less weight. The least

---

[1] Regarding the plaintiff's compliance with her medication, Dr. Beidleman notes the plaintiff's medication list, including her psychiatric medications, and notes that the plaintiff stated that she doesn't have access to her medications at First Light. (Tr. at 374). In the plaintiff's brief she argues that the plaintiff was compliant with her medication at the time of Dr. Beidleman's evaluation. Whether or not the plaintiff was compliant with her medication at the time of Dr. Beidleman's evaluation, the ALJ did not err in giving little weight to Dr. Beidleman's findings based on the rest of the plaintiff's medical record, which indicates that the plaintiff's symptoms are controlled when she is compliant with her medication.

weight is given to a non-examining medical source, who may provide an opinion based on the record but who has not examined the patient. 20 C.F.R. § 404.1502. Even so, any medical source's opinion can be rejected where the evidence supports a contrary conclusion. *See, e.g., McCloud v. Barnhart*, 166 Fed. App'x 410, 418-19 (11th Cir. 2008). Even the opinion of a treating physician can be disregarded where "good cause" is shown. *Crawford v. Commissioner of Social Security*, 363 F.3d 115, 1159 (11th Cir. 1997).

At issue with regard to Dr. Beidleman's opinion, is the opinion of a consultative psychologist who examined the plaintiff on one occasion, but had no ongoing relationship with her, and who did not treat her. He based many of his conclusions on her own descriptions of her condition. His opinion is entitled to weight only to the extent that it is bolstered by the evidence, is not contrary to other medical evidence, does not contradict the opinions of treating physicians, and to the extent that it is not conclusory or inconsistent with his own findings. In this case, Dr. Beidleman reached the conclusion that the plaintiff may have difficulty functioning in a work environment. As the ALJ noted, that conclusion is inconsistent with the plaintiff's long-term treatment records. The plaintiff's treatment records indicate that, when the plaintiff is compliant with her medication regiment, her symptoms are controlled. Because Dr. Beidleman's conclusion is not

bolstered by the evidence, his opinion is not entitled to any weight. In this case, the ALJ carefully reviewed the treating physician's records and heeded the medical opinions therein. The ALJ clearly articulated "good cause" for the limited weight she gave to Dr. Beidleman's assessment as a consultative examiner; therefore, the ALJ did not commit reversible error.

## IV.    Conclusion

The ALJ's determination is supported by substantial evidence and was both comprehensive and consistent with the applicable SSA rulings. The objective medical and other evidence supports the ALJ's conclusion that Ms. Hankins' conditions did not cause disabling limitations and instead shows that she could perform some work. Upon review of the administrative record, and considering all of Ms. Hankins' arguments, the Commissioner's decision is due to be and hereby is AFFIRMED and the action is DISMISSED WITH PREJUDICE.

DONE this 18th day of September, 2015.

T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE